# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br>Shontain Levon Peterson<br><br>*Defendant(s)* | Case No. 1:22MJ 508-1+2 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 15, 2022__ in the county of __Forsyth__ in the __Middle__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) | Distribution of a Controlled Substance |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

/s/ Russell Johnson by LPA
*Complainant's signature*

Russell Johnson, Special Agent, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 12/14/22

*Judge's signature*

City and state: Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF SPECIAL AGENT KEATON UNDERHILL
# IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Russell Johnson, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, state as follows:

## AFFIANT'S EXPERIENCE

1. I am an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. As a law enforcement officer, I have used and/or participated in a variety of methods investigating criminal activity including firearms and narcotics related crimes, including, but not limited to, visual surveillance, witness interviews, the use of search warrants, confidential informants, and undercover agents. Based upon information gained through this investigation and others pertaining to narcotics trafficking activities of the participant in this investigation, I am familiar with the ways narcotics traffickers conduct their business. My familiarity includes the various means and methods by which narcotics traffickers acquire and distribute their narcotics, their use of cellular telephones, and their use of vehicles in furtherance of narcotics trafficking and money transactions.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of an application for a criminal complaint for Shontain Levon PETERSON and

4. I have probable cause to believe that PETERSON and            did manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance in violation of 21 U.S.C. § 841(a)(1), specifically Distribution of a Controlled Substance, specifically a mixture and substance containing cocaine base.

## THE INVESTIGATION – FACTUAL BACKGROUND

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause of violation of federal criminal offense, specifically 21 U.S.C. § 841(a)(1).

## PROBABLE CAUSE

6. In December 2018, an ATF TFO learned of PETERSON'S drug trafficking activities, to include him selling cocaine and heroin. In October 2019, the TFO received additional intelligence regarding PETERSON selling cocaine from multiple locations in and around Winston Salem, to include 180 Willow Oak Drive, Apartment 304, Winston-Salem, North Carolina.

2

7. In November 2019, the TFO had a CI purchase one (1) ounce of cocaine base from PETERSON at 180 Willow Oak Drive, Apartment 304. Later in November 2019, the TFO had the CI call PETERSON and order another ounce of cocaine base and PETERSON told the CI that he was "making a run" and that the CI could acquire the ounce from his associate. PETERSON instructed the CI to go to 180 Willow Oak Drive, Apartment 304, which the CI did. The CI purchased the one ounce of cocaine from            .

8. In May of 2022, the TFO and an ATF SA had a CI purchase two (2) ounces of cocaine base from            . The transaction began at 180 Willow Oak Drive, Apartment 304, however was completed at a different location.

9. On November 8, 2022, an ATF CI arranged for ATF CI2 to meet with PETERSON to purchase one (1) ounce of cocaine hydrochloride. When CI2 arrived, PETERSON invited CI2 inside 180 Willow Oak Drive, Apartment 304. CI2 observed a bag of cocaine base and asked if that belonged to PETERSON. He replied that it belonged to his associate, believed to be            , who was not present. PETERSON was under the impression that CI2 was purchasing two (2) ounces of cocaine hydrochloride. CI2 informed PETERSON that he would purchase two (2) ounces; however, CI2 stated he wanted one (1) of the ounces as cocaine base. PETERSON stated he would cook it and proceeded to cook one (1) ounce into cocaine base while CI2 waited. After completing the cooking process, CI2 paid PETERSON $2,200.00 in ATF

undercover funds to complete the transaction for the two (2) ounces. The transaction was audio/video recorded, the substances field tested positive, and funds utilized were prerecorded. At the conclusion of this undercover purchase TFO La Valley showed CI2 a photograph of PETERSON from a law enforcement database and CI2 positively identified him as the individual involved in this transaction. The DEA Laboratory later confirmed one of the exhibits purchased was cocaine base with an official weight of 27.45 grams and one of the exhibits purchased was cocaine hydrochloride with an official weight of 27.59 grams.

10. On November 15, 2022, ATF CI2 met with PETERSON at his apartment to discuss a previously arranged purchase of cocaine base involving an ATF UC. CI2 arrived and went inside 180 Willow Oak Drive, Apartment 304. CI2 observed a large amount of what appeared to be cocaine hydrochloride, cocaine base, and marihuana inside the apartment. PETERSON and          were both inside the residence. CI2 acquired four and a half (4.5) ounces of cocaine base from PETERSON. In addition,          provided PETERSON with two baggies of cocaine base cocaine totaling two and a half (2.5) ounces. PETERSON then provided the cocaine base received from          to CI2 as a "front." CI2 then provided PETERSON with the undercover buy funds and took the cocaine base to an ATF UC in a nearby parking lot (the ATF UC had arrived and parked in the parking lot of the residence). After

4

transferring the cocaine base to the ATF UC, CI2 received $5,400.00 in ATF undercover funds from the ATF UC, which the CI then paid to PETERSON. PETERSON returned $500.00 as a broker fee to the CI. The cocaine base weighed approximately 200.75 grams. The transaction was audio/video recorded, the substance field tested positive, and funds utilized were prerecorded. At the conclusion of this undercover purchase TFO La Valley showed CI2 photographs of PETERSON and _____ from a law enforcement database and CI2 positively identified PETERSON and _____ as the individuals involved in this transaction. The DEA Laboratory later confirmed the exhibit purchased was cocaine base with an official weight of 195 grams.

11. On November 16, 2022, a CI was directed by PETERSON to travel to 180 Willow Oak, Apartment 304, to meet with _____ and receive a sample of fentanyl. When the CI arrived, _____ provided the CI approximately two (2) grams of fentanyl. The transaction was audio/video recorded.

12. On November 17, 2022, an ATF UC met with PETERSON and paid him $2,750.00 for the two and a half (2½) ounces of cocaine base that PETERSON and _____ fronted the CI on November 15, 2022. The transaction was audio/video recorded and funds utilized were prerecorded.

13. On November 28, 2022, an ATF UC and CI met with PETERSON and discussed the UC's desire to obtain approximately four (4) ounces of fentanyl so that UC could press his own pills. PETERSON informed the UC

5

and the CI that he had been fronted approximately nine (9) ounces of fentanyl by his source of supply (SOS) and needed to provide his SOS money prior to placing another order. PETERSON agreed to have the UC pay him $2,500.00 for the four (4) ounces and owe him $3,100.00. PETERSON called his SOS, who agreed to meet the group at 2825 New Walkertown Road, Winston Salem, North Carolina. The UC observed the SOS and documented his license plate. PETERSON entered the SOS's vehicle and when he exited, he was carrying a Christmas bag that PETERSON gave to the UC, which contained the four (4) ounces of fentanyl. The UC paid PETERSON the agreed upon $2,500.00 with an agreement to repay the $3,100.00 later. The fentanyl weighed approximately 115.97 grams. The transaction was audio/video recorded, the substance field tested positive, and funds utilized were prerecorded.

14. On November 30, 2022, the CI received a phone call from PETERSON. PETERSON stated he and his "brother" wanted to discuss having the UC and the CI take their raw fentanyl and press it into pills for them. When they met in person, the CI informed PETERSON that the UC and the CI were still waiting on materials to begin pressing pills. The CI explained the profit opportunities to PETERSON if they pressed his fentanyl into pills. PETERSON stated his "brother" gets his fentanyl from PETERSON. PETERSON showed the CI a bag of fentanyl that PETERSON estimated to be approximately 125 grams. The CI suggested PETERSON put his SOS in

6

contact with the UC, which PETERSON said he would consider. The transaction was audio/video recorded.

15. On December 6, 2022, an ATF UC met with PETERSON and paid him $3,100.00 for the partially fronted four (4) ounces of fentanyl received on November 28, 2022. PETERSON showed the UC approximately four (4) ounces of fentanyl that he was in possession of and stated he wanted the UC to press an entire kilo of fentanyl into pills for him. The transaction was audio/video recorded and funds utilized were prerecorded.

16. On December 13, 2022, the CI arranged a meet between the UC, the CI, and PETERSON. During the meet, PETERSON provided the UC and the CI with half a kilo of fentanyl and the UC provided PETERSON with a $5,000.00 "down payment." PETERSON told the UC and the CI that they needed nine (9) ounces back out of half the kilo of fentanyl; however, they had not had time to separate the amount they planned to keep from the amount they planned to sell the UC and the CI. The fentanyl weighed approximately 520 grams. The transaction was audio/video recorded, the substance field tested positive, and funds utilized were prerecorded.

25. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that on November 15, 2022, within the Middle District of North Carolina, Shontain Levon PETERSON and

7

committed the following offense: Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). §

/S/ RUSSELL JOHNSON
Russell Johnson, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Dated: December 14, 2022

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina